UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILLIP VELAZQUEZ, | § | CIVIL ACTION NUMBER |
| (TDCJ # 02363422) | § | 4:25-cv-01148 |
| Plaintiff, | § | |
| | § | |
| | § | |
| versus | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| M. OGARI, *et al*, | § | |
| Defendants. | § | |

## OPINION AND ORDER ON MOTION TO DISMISS

Plaintiff Phillip Velazquez sued multiple defendants under 42 USC §1983. The motion to dismiss by Defendants Mary Ogari, Ramon Serrano, Will Hudson, Christopher Garcia, and the Texas Department of Criminal Justice is granted. Dkt 16.

1.   Background

Plaintiff proceeds *pro se* and *in forma pauperis*. His §1983 complaint alleges that TDCJ and multiple TDCJ officials violated his constitutional rights in a series of events that began with the discovery of a cell phone. Dkt 1.

He alleges that on November 7, 2022, Corrections Officer Ogari found a cell phone in a jacket that was left in the dayroom of Plaintiff's pod. Believing the cell phone belonged to Plaintiff, she filed a major disciplinary case against him for possessing contraband. Id at 4.

Plaintiff was moved to a pre-hearing detention cell, where Gang Intelligence Officer Serrano questioned him. Serrano told Plaintiff that he would lose his privileges, line class, and custody level if convicted of the disciplinary charge. Warden Garcia advised Plaintiff not to fight the charge, claiming there was video footage to support it. Ibid.

At the disciplinary hearing, counsel substitute told the hearing officer that Plaintiff had no favorable evidence to present. The hearing officer found Plaintiff guilty of the charge and reduced his custody status and line class. Ibid.

Plaintiff appealed the conviction through TDCJ's grievance process. While the appeal was pending, Serrano denied Plaintiff some of his mail and packages, contending that they contained contraband. Serrano also conducted numerous searches of Plaintiff's cell but found none. Id at 7.

On April 4, 2023, Plaintiff's disciplinary conviction was overturned, but he wasn't notified of the decision until mid-May. During those six weeks, Plaintiff remained in close custody despite the now-overturned conviction. Ibid.

On May 24, 2023, Sergeant Hudson and a second officer searched Plaintiff's cell, again looking for contraband. The officials wore gas masks and carried gas canisters, but they didn't videotape the search as required by TDCJ policy. Hudson claimed he found a cell phone during the search, and Plaintiff was again charged with possessing contraband. Plaintiff was later found guilty of the second charge, and that conviction was upheld. Ibid.

In December 2023, Plaintiff's mother and father were denied an in-person visit with Plaintiff that Garcia had previously authorized. In January 2024, Plaintiff's mother, father, and girlfriend were placed on his negative mailing list, allegedly due to illegal money transactions. No disciplinary charges were ever filed on these allegedly illegal transactions. Ibid.

Plaintiff alleges that TDCJ "administration" violated his First, Eighth, and Fourteenth Amendment procedural due process rights by these actions. He alleges that Ogari violated his rights by abusing her authority and fabricating a false disciplinary charge against him. He alleges that Serrano retaliated against him for using the grievance process to successfully challenge the first disciplinary conviction. He alleges that Hudson conducted the second search in retaliation for the overturned conviction, violated

TDCJ policies while conducting the search, and violated Plaintiff's due process rights at the ensuing disciplinary hearing. He alleges that Garcia is liable because he allowed these corrupt actions to occur. Id at 3, 6. As relief, he seeks an order restoring his custody status and awarding him money damages. Id at 4.

Defendants were ordered to respond to the complaint. Dkt 7. Defendants TDCJ, Ogari, Garcia, Serrano, and Hudson responded with a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), raising multiple defenses to Plaintiff's claims against them. Dkt 16. TDCJ was unable to identify the remaining defendants based on the information included in Plaintiff's complaint. Dkt 15.

Plaintiff responded to the motions, reiterating his factual allegations and raising for the first time an equal protection claim. He also clarified that his First Amendment claim arises from the alleged retaliation by Serrano, Hudson, and Garcia for Plaintiff's use of the grievance process. His Eighth Amendment claim is based on Defendants leaving him in close custody after his conviction was overturned. And his procedural due process claims are based on the alleged conspiracy of all Defendants during the disciplinary proceedings to obtain a false conviction. Dkt 17.

Defendants filed a reply, reasserting their defenses and contending that any additional facts and claims contained in Plaintiff's response weren't properly raised in that response and so shouldn't be considered. Dkt 18.

Plaintiff filed a motion to "deny Defendants' reply," in which he alleges for the first time a claim that Garcia failed to properly train and supervise his subordinates. Dkt 19.

### 2. Legal standard

Plaintiff's complaint is construed liberally because he proceeds *pro se. Coleman v United States*, 912 F3d 824, 828 (5th Cir 2019), citing *Erickson v Pardus*, 551 US 89, 94 (2007, *per curiam*).

3

Dismissal is appropriate "'when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re Federal Emergency Management Agency Trailer Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Association, Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998). Rule 12(b)(1) permits a defendant to seek such dismissal. Once put at issue, the party asserting jurisdiction has the burden to establish by a preponderance of the evidence that it properly exists. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008). Indeed, a presumption against subject-matter jurisdiction "must be rebutted by the party bringing an action to federal court." *Coury v Prot*, 85 F3d 244, 248 (5th Cir 1996).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Reading these Rules together, the Supreme Court has held that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 544.

A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 US at 570. A claim has *facial plausibility* "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on

plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 US at 678, quoting *Twombly*, 550 US at 556.

Review on a motion to dismiss under Rule 12(b)(6) is constrained, being generally limited to the contents of the complaint and its attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014). The reviewing court "must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019) (cleaned up). But "courts 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Vouchides v Houston Community College System*, 2011 WL 4592057, \*5 (SD Tex), quoting *Gentilello v Rege*, 627 F3d 540, 544 (5th Cir 2010). And while *pro se* litigants are held to less stringent pleading standards than attorneys, they aren't excused from the requirement to allege sufficient facts to state a plausible claim. See *Taylor v Books A Million Inc*, 296 F3d 376, 378 (5th Cir 2002); *Toole v Peak*, 361 F Appx 621, 621 (5th Cir 2010, *per curiam*) (self-represented litigant "still must actually argue something that is susceptible of liberal construction").

### 3. Discussion

#### a. Official capacity claims

Plaintiff seeks an award of money damages from TDCJ and the individual defendants in their official capacities.

The Eleventh Amendment bars suits for damages against a state in federal court. *Kentucky v Graham*, 473 US 159, 169 (1985). "Absent waiver, neither a State nor agencies acting under its control [are] 'subject to suit in federal court.'" *Puerto Rico Aqueduct and Sewer Authority v Metcalf & Eddy Inc*, 506 US 139, 144 (1993), quoting *Welch v Texas Department of Highways and Public Transportation*, 483 US 469, 480 (1987). This bar also applies to state officials sued for damages in their official capacity. *Kentucky*, 473 US at 169.

5

TDCJ is an arm of the State of Texas and so is immune from suit in federal court under the Eleventh Amendment. *Valentine v Collier*, 993 F3d 270, 280 (5th Cir. 2021). Likewise, actions against state officials in their official capacity are treated as actions against the state and are barred by the Eleventh Amendment. *Hafer v Melo*, 502 US 21, 25 (1991). Plaintiff's claims against TDCJ and the individual defendants in their official capacity can't proceed in federal court.

The motion by Defendants to dismiss under Rule 12(b)(1) is GRANTED. Dkt 16.

The claims by Plaintiff for money damages against TDCJ and against the individual Defendants in their official capacity are DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.

### b.   May 2023 disciplinary hearing

Plaintiff alleges that Defendants violated TDCJ policies and Plaintiff's constitutional rights during the proceedings relating to the May 2023 disciplinary charge.

To bring a §1983 action based on an allegedly unconstitutional conviction, the plaintiff must demonstrate that "the conviction . . . has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus* [under] 28 USC §2254." *Heck v Humphrey*, 512 US 477, 486–87 (1994). *Heck* bars any cause of action under §1983, regardless of the type of relief sought, that would necessarily imply that a conviction or sentence is invalid unless the conviction has already been invalidated through proper channels. Id at 487.

In the disciplinary context, *Heck* doesn't bar an action if the basis of a prisoner's claim "is distinct from the basis of his disciplinary conviction." *Gray v White*, 18 F4th 463, 467–68 (5th Cir 2021), quoting *Bourne v Gunnels*, 921 F3d 484, 491 (5th Cir 2019). But if a ruling in the prisoner's favor would "negate the prison's finding that [the prisoner] violated its policies and was subject to disciplinary action

as a result," the action can't proceed unless the prisoner satisfies *Heck*'s favorable-termination requirement. Ibid. If the plaintiff hasn't satisfied the favorable-termination requirement, "he is barred from any recovery." *Randell v Johnson*, 227 F3d 300, 301 (5th Cir 2000, *per curiam*).

Plaintiff alleges that the May 2023 disciplinary charge was filed in retaliation for his successful challenge to his earlier disciplinary conviction. But a ruling in his favor would necessarily negate the finding at the disciplinary hearing that he violated TDCJ's policies and was subject to discipline. His claims thus aren't appropriate for federal court consideration at this time. Until Plaintiff receives a ruling that satisfies *Heck*'s favorable-termination requirement, no action will accrue under §1983. *Heck*, 512 US at 488–89.

The motion to dismiss by Defendants as to Plaintiff's claims from the May 23 disciplinary charge is GRANTED. Dkt 16.

Plaintiff's claims against all Defendants arising from the May 2023 disciplinary conviction are DISMISSED WITHOUT PREJUDICE to being reasserted if and when the *Heck* conditions are satisfied. See *Clarke v Stalder*, 154 F3d 186, 191 (5th Cir 1998); *Johnson v. McElveen*, 101 F3d 423, 424 (5th Cir 1996, *per curiam*).

### c. Warden Christopher Garcia

Plaintiff claims that Garcia is liable because he "permitted corrupt actions by Wynne Unit employees." Dkt 1 at 3. Plaintiff also alleges that Garcia "affirmed" the second disciplinary charge by denying Plaintiff's appeal. Ibid.

Under §1983, supervisory officials aren't responsible for the actions of their subordinates on a theory of either vicarious liability or *respondeat superior*. See *Oliver v Scott*, 276 F3d 736, 742 (5th Cir 2002); *Thompkins v Belt*, 828 F2d 298, 303 (5th Cir 1987). Only the direct actions or omissions of a government official will give rise to individual liability under §1983. See *Alton v Texas A&M University*, 168 F3d 196, 200 (5th Cir 1999). Plaintiff

therefore can't hold Garcia liable based solely on actions taken or not taken by his subordinates.

But supervisors can be held liable for their own actions. To state a claim against a supervisory official under §1983, the plaintiff must allege facts showing either (i) the supervisor's personal involvement in a constitutional deprivation and a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or (ii) the supervisor's decision to implement an unconstitutional policy that resulted in a violation of the plaintiff's constitutional rights. See *Thompkins,* 828 F2d at 303–04; see also *Gates v Texas Department of Protective and Regulatory Services*, 537 F3d 404, 435 (5th Cir 2008).

The only fact Plaintiff alleges concerning Garcia's participation in any of the alleged wrongdoing is his denial of Plaintiff's appeal of the disciplinary conviction in May 2023. But as explained above, any claim arising from that conviction is barred by *Heck*.

Absent Garcia's personal participation, Plaintiff can hold him liable only by showing that he implemented an unconstitutional official policy that causally resulted in the alleged violation. *Peña v City of Rio Grande City*, 879 F3d 613, 620 (5th Cir 2018), citing *Gates*, 537 F3d at 435. An *official policy* includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v Thompson*, 563 US 51, 61 (2011). Liability attaches when "supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins,* 828 F2d at 304, quoting *Grandstaff v City of Borger*, 767 F2d 161, 169, 170 (5th Cir 1985).

This standard requires more than conclusory assertions. As framed by the Fifth Circuit, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña*, 879 F3d at

621, quoting *Spiller v City of Texas City, Police Department,* 130 F3d 162, 167 (5th Cir 1997).

In addition, the plaintiff must allege facts showing that the supervisory official acted with deliberate indifference. *Porter v Epps*, 659 F3d 440, 446 (5th Cir 2011). *Deliberate indifference* is "a stringent standard of fault," one "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. at 446–47, quoting *Connick*, 563 US at 61. The allegations necessary to show a supervisor's deliberate indifference generally must include at least a pattern of similar violations. *Rios v City of Del Rio, Texas,* 444 F3d 417, 427 (5th Cir 2006) (citations omitted).

Plaintiff doesn't identify any official policy or custom implemented or adopted by Garcia, nor does he show how any such policy caused the alleged violation of his constitutional rights. Absent facts that could support the existence of an unconstitutional official policy, Plaintiff's complaint fails to state a claim for supervisory liability against Garcia.

Seeking to avoid this result, Plaintiff belatedly raises a claim in his "Motion to Deny Defendants' Reply" based on a failure to train or supervise. Dkt 19. This claim fails for two reasons.

*First*, Plaintiff was previously advised that no amendments or supplements to his complaint would be permitted without prior approval. Dkt 6. He didn't seek approval before attempting to add these new claims against Garcia to his current action.

*Second*, Plaintiff doesn't allege facts that state a claim for failure to train or supervise. Such a claim requires facts demonstrating that (i) the supervisor either failed to supervise or train the subordinate official, (ii) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (iii) the failure to train or supervise amounts to deliberate indifference to the constitutional right allegedly violated. See *Estate of Davis ex rel McCully v City of North Richland Hills*, 406 F3d 375,

9

381 (5th Cir 2005). *Deliberate indifference* requires showing that the official (i) was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and (ii) actually drew the inference. Ibid. Proof of more than a single instance of lack of training or supervision causing a violation of constitutional rights is generally required before such lack can constitute deliberate indifference. Instead, the plaintiff must show a pattern of similar violations that together demonstrate that the training or supervision is "so clearly inadequate as to be obviously likely to result in a constitutional violation." *Roberts v City of Shreveport*, 397 F3d 287, 292 (5th Cir 2005), quoting *Burge v St Tammy Parish*, 336 F3d 363, 370 (5th Cir 2003).

Plaintiff makes only a conclusory allegation that Garcia failed to train or supervise the officers at the Wynne Unit. He alleges no *facts* showing that Garcia was directly involved in the training or supervision of any of the other officers, that any training or supervision they received was inadequate, or that Garcia was aware of a pattern of similar violations sufficient to put him on notice that additional training or supervision was needed to prevent constitutional violations. Plaintiff's conclusory allegation based on his own earlier conviction and some unidentified similar charges against other unidentified prisoners at unidentified times doesn't show the pattern or practice necessary to state a claim against Garcia for failure to train or supervise.

Even considering the new facts included in Plaintiff's unauthorized supplemental pleading, he doesn't allege facts sufficient to state a claim for supervisory liability against Garcia.

The motion to dismiss by Garcia is GRANTED. Dkt 16.

The claims by Plaintiff against Garcia are DISMISSED WITH PREJUDICE for failing to state a claim upon which relief can be granted.

10

d.   Mary Ogari

Plaintiff alleges that Ogari violated his rights by fabricating the basis for the first disciplinary charge.

Filing a false or fabricated disciplinary charge, without more, isn't a constitutional violation. See *Grant v Thomas*, 1994 WL 558835, *1 (5th Cir, *per curiam*), citing *Collins v King*, 743 F2d 248, 253–54 (5th Cir 1984). "A claim that a prisoner was 'improperly charged with things he did not do,' standing alone, does not state a due process claim." *Harris v Smith*, 482 F Appx 929, 930 (5th Cir 2012, *per curiam*), citing *Collins*, 743 F2d at 253. Thus, an allegation that a prison official brought a false disciplinary charge against a prisoner doesn't state a claim under §1983 so long as the prisoner has been afforded due process through a subsequent hearing. Collins, 743 F2d at 253.

Plaintiff admits that he had a subsequent hearing and that he was ultimately cleared of the charge. Because of this, he fails to state a claim under §1983 against Ogari based on the allegedly false disciplinary charge.

The motion to dismiss by Ogari is GRANTED. Dkt 16.

The claims by Plaintiff against Ogari are DISMISSED WITH PREJUDICE for failing to state a claim upon which relief can be granted.

e.   Ramon Serrano and Will Hudson

Plaintiff alleges that Serrano and Hudson violated his constitutional rights by retaliating against him for exercising his First Amendment right to file grievances and challenge disciplinary convictions.

The Fifth Circuit teaches that prison officials "may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct." *Morris v Powell*, 449 F3d 682, 684 (5th Cir 2006), citing *Woods v Smith*, 60 F3d 1161, 1164 (5th Cir 1995). A *prima facie* case of retaliation in the prison context requires the plaintiff to show that (i) he exercised a specific constitutional right, (ii) the defendant intended to retaliate against him for the exercise of that right, (iii) the defendant took a retaliatory adverse action, and (iv) the plaintiff's

11

exercise of the constitutional right caused the retaliatory adverse action. *Johnson v Rodriguez*, 110 F3d 299, 310 (5th Cir 1997). The adverse acts must be sufficiently serious to rise to the level of a constitutional violation. *Morris*, 449 F3d at 684–85. That standard requires acts that "would chill or silence a person of ordinary firmness from future First Amendment activities." Id at 685–86, quoting *Crawford-El v Britton*, 93 F3d 813, 826 (DC Cir 1996).

Serrano and Hudson contend that Plaintiff fails to establish the fourth element. To allege the *causation* element in a retaliation claim, the plaintiff must either "produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F3d at 1166. The plaintiff's personal belief that he's the victim of retaliation isn't sufficient. *Johnson*, 110 F3d at 310.

Plaintiff's allegations don't meet this standard. He alleges that Serrano conducted more frequent cell searches and closely examined Plaintiff's incoming mail and packages while the disciplinary appeal was pending. But because the underlying conviction for having contraband was valid at that time, those facts don't support a plausible inference of retaliation. He also alleges that Hudson retaliated for the overturned conviction by planting the second cell phone. But Plaintiff doesn't allege facts showing that Hudson knew of the overturned conviction or had any other reason to retaliate against Plaintiff. Absent such knowledge, retaliation can't plausibly be inferred. Plaintiff's conclusory factual allegations are thus legally insufficient to state a claim for retaliation against Serrano and Hudson.

The motion to dismiss by Serrano and Hudson is GRANTED. Dkt 16.

The claims against them by Plaintiff are DISMISSED WITH PREJUDICE for failing to state a claim upon which relief can be granted.

### f.   Fourteenth Amendment claims

Plaintiff alleges that unspecified Defendants violated his Fourteenth Amendment rights in two ways, by (i) denying him due process in the disciplinary hearings, and (ii) violating his rights under the Equal Protection Clause.

### i.   Due process

Plaintiff alleges that he was denied due process during the first disciplinary hearing because Serrano conspired with an unidentified disciplinary hearing officer and the counsel substitute to obtain a finding of guilt despite a lack of evidence. *Heck* doesn't bar this claim because the conviction was later reversed. See *Clarke*, 154 F3d at 189.

Due process in prison disciplinary proceedings entitles the prisoner to (i) written notice of the charges at least 24 hours prior to a disciplinary hearing, (ii) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," and (iii) "a written statement by the factfinders as to the evidence relied on and the reason for the disciplinary action." *Wolff v McDonnell*, 418 US 539, 564, 566 (1974). There must also be "some evidence" supporting the finding of guilt. *Morgan v Quarterman*, 570 F3d 663, 668 (5th Cir 2009). But the later reversal of a disciplinary conviction doesn't automatically establish that due process violations occurred during the hearing. See *Grant*, 1994 WL 558835 at *1.

Plaintiff doesn't allege that he was denied written notice of the charges, denied an opportunity to call witnesses or present evidence, or denied a written statement of the reason for the decision. Instead, he seems to allege that there wasn't any evidence to support the finding of guilt. But Plaintiff alleges that Ogari brought the charge because she believed the jacket belonged to him. Dkt 1 at 4. He also alleges that Garcia told him not to fight the charge "because of footage." Ibid. And Plaintiff's Step 2 grievance states that video footage from the dayroom

13

exists, but it doesn't prove that the jacket "definitely" or "positively" belonged to him. Id at 15.

District courts don't independently assess witness credibility or reweigh the evidence in determining whether "some evidence" existed to support the conviction. *Richards v Dretke*, 394 F3d 291, 294 (5th Cir 2004). Because video footage existed that apparently contained some evidence relevant to Plaintiff's possession of the jacket, the facts he alleges don't support a conclusion that he was convicted without "some evidence" of guilt.

Plaintiff thus doesn't allege facts stating a claim for a violation of his Fourteenth Amendment procedural due process rights.

### ii.    Equal Protection

In his response to Defendants' motion, Plaintiff for the first time raises a claim that unspecified Defendants violated his equal protection rights by leaving him in G5 custody after his disciplinary conviction was overturned. Dkt 17. This claim can't go forward for three reasons.

First, "new allegations cannot be raised in response to a motion to dismiss." *Schieroni v Deutsche Bank National Trust Company*, 2011 WL 3652194, *6 (SD Tex). Plaintiff didn't raise this claim in his complaint, and he can't raise it for the first time in response to Defendants' motion to dismiss.

Second, Plaintiff was previously advised that no amendments or supplements to his complaint would be permitted without prior Court approval. Dkt 6. He didn't seek approval before attempting to add this new claim to his current action, so it's not properly included in this action.

Third, even if Plaintiff's response could be construed as a motion seeking leave to amend to add the new claim, it wouldn't be granted because he doesn't allege facts stating an equal protection claim. To succeed on such a claim, a plaintiff "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Adkins v Kaspar*, 393 F3d 559, 566 (5th Cir

14

2004), quoting *Muhammad v Lynaugh*, 966 F2d 901, 903 (5th Cir 1992). A plaintiff must also show that the disparate treatment arises from a suspect classification, such as race, alienage, national origin, or gender. *DC v Klein Independent School District*, 711 F Supp 2d 739, 748 (SD Tex 2010).

Plaintiff claims his right to equal protection was violated when his custody level wasn't immediately restored after the first disciplinary conviction was overturned. But he doesn't allege facts showing that he was treated differently from other similarly situated prisoners. Nor does he identify any suspect classification to which he belongs.

In short, even if considered, his allegations fail to state a claim for an equal protection violation. Granting leave to amend would therefore be futile.

The motion by Defendants to dismiss the claims for procedural due process and equal protection violations is GRANTED. Dkt 16.

The Fourteenth Amendment claims by Plaintiff are DISMISSED WITH PREJUDICE for failing to state a claim.

### g.  Eighth Amendment claims

Plaintiff alleges that unspecified Defendants violated his Eighth Amendment rights by subjecting him to inhumane conditions after his custody level was changed. He specifically alleges that he was "oppressed by the administration in close[] custody." Dkt 1 at 14. In his response, Plaintiff also adds that unspecified Defendants subjected him to "a hostile environment, floods, fires, fights, and staff misconduct," while being deliberately indifferent to these conditions. Dkt 17 at 3.

The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v Brennan*, 511 US 825, 832 (1994), quoting *Hudson v Palmer*, 468 US 517, 526–27 (1984). Comfortable prisons aren't required, and the challenged conditions must pose a

substantial risk of serious harm. *Ball v LeBlanc*, 792 F3d 584, 592 (2015).

Plaintiff alleges no facts showing that he's been denied adequate food, clothing, shelter, or medical care. And even considering the additional facts alleged in his response, he doesn't show that his confinement in close custody posed a substantial risk of serious harm. His allegations don't state a claim for relief under the Eighth Amendment against any Defendant.

The motion by Defendants to dismiss the Eighth Amendment claims is GRANTED. Dkt 16.

The Eighth Amendment claims by Plaintiff are DISMISSED WITH PREJUDICE for failing to state a claim upon which relief can be granted.

h.   First Amendment

The complaint by Plaintiff alleges that unspecified Defendants violated his First Amendment rights in some unspecified way. In his response to the motion to dismiss, Plaintiff clarifies that his First Amendment claim arises from the alleged retaliation by Serrano, Hudson, and Garcia for his use of the grievance process.

As explained above, Plaintiff doesn't allege sufficient facts to support a retaliation claim against any of the defendants.

The motion by Defendants to dismiss the First Amendment claims is GRANTED. Dkt 16.

The First Amendment claims by Plaintiff are DISMISSED WITH PREJUDICE for failing to state a claim upon which relief can be granted.

i.   Qualified immunity

Defendants raise the affirmative defense of qualified immunity. Such immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v Callahan*, 555 US 223, 231 (2009), quoting *Harlow v Fitzgerald*, 457 US 800, 818 (1982). Its

16

availability as a defense ultimately "turns only upon the objective reasonableness of the defendant's acts." *Thompson v Upshur County*, 245 F3d 447, 457 (5th Cir 2001).

Analysis of qualified immunity involves two inquiries. See *Aguirre v City of San Antonio*, 995 F3d 395, 406 (5th Cir 2021); see also *Batyukova v Doege*, 994 F3d 717, 724–25 (5th Cir 2021). A court first asks "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Aguirre*, 995 F3d at 406, quoting *Tolan v Cotton*, 572 US 650, 655–56 (2014, *per curiam*). Second, it determines whether the allegedly wrongful conduct violated clearly established law. *Tolan*, 572 US at 656, citing *Hope v Pelzer*, 536 US 730, 739 (2002).

As explained above, Plaintiff doesn't sufficiently allege that any Defendant violated his constitutional rights. Consideration of the second question is thus unnecessary.

The motion by Defendants to dismiss Plaintiff's claims against them based on qualified immunity is GRANTED. Dkt 16.

The claims by Plaintiff against Defendants are DISMISSED WITH PREJUDICE as barred by qualified immunity.

### 4. Conclusion

The motion to dismiss by Defendants Mary Ogari, Ramon Serrano, Will Hudson, Christopher Garcia, and the Texas Department of Criminal Justice is GRANTED. Dkt 16.

The claims by Plaintiff Phillip Velazquez against these Defendants are DISMISSED WITH PREJUDICE.

Plaintiff's motion to deny Defendants' reply is DENIED. Dkt 19.

A separate order will be entered concerning Plaintiff's claims against the other remaining Defendants.

Defendants' motion to substitute counsel is GRANTED. Assistant Attorney General Abigail Carter is substituted in place of Assistant Attorney General Joseph P. McDuffie.

Dkt 21.

SO ORDERED.

Signed on ___March 13, 2026___, at Houston, Texas.

_____

Honorable Charles Eskridge
United States District Judge